# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | |
|---|---|
| ERIC BERTHIAUME,<br><br>                                   *Plaintiff,*<br><br>v.<br><br>TODD DOUGLAS DOREMUS, doing business as YELLOW SUBMARINE<br><br>                                   *Defendant.* | CASE NO. 6-13-cv-00037<br><br><br>MEMORANDUM OPINION AND ORDER<br><br><br>JUDGE NORMAN K. MOON |

       This matter comes before the Court on Plaintiff Eric Berthiaume's Motion for Judgment by Default ("Motion for Default Judgment") (docket no. 7). Plaintiff filed his Complaint (docket no. 1) in this Americans with Disabilities Act ("ADA") case on July 3, 2013. Plaintiff claims Todd Douglas Doremus ("Defendant"), owner of the Yellow Submarine restaurant in Lynchburg, Virginia, discriminated against Plaintiff, who has cerebral palsy and uses a walker to move, through barriers to access the restaurant and its restrooms. On October 1, 2013, Plaintiff provided personal service of his Complaint and a "Summons in a Civil Action" on Defendant at Yellow Submarine. Defendant did not respond to the Complaint or summons, and did not file an answer or other documentation in this Court. On October 31, 2013, Plaintiff filed for an Entry of Default with the Clerk of this Court, and received one on November 1, 2013 (docket no. 6). On December 30, 2013, Plaintiff filed his Motion for Default Judgment under Federal Rule of Civil Procedure 55(b)(2). As part of that judgment, Plaintiff seeks permanent injunctions requiring Defendant's compliance with the ADA so that Plaintiff could access his restaurant.

       On January 8, 2014, I ordered the parties to schedule a hearing so I could further explore Plaintiff's allegations and other matters. Defendant received notice of the hearing by certified

1

mail on January 22, 2014. Plaintiff submitted supplemental memoranda on the issues of standing, ready achievability of relief, and attorneys' fees on February 4–6, 2014. On February 7, 2014, this Court heard from both Plaintiff's counsel and Defendant at the hearing.[1] For the reasons that follow, I find Plaintiff has sufficiently alleged a prima facie case of discrimination under the ADA, and I will grant the permanent injunctions enumerated at the end of this opinion.

## II. BACKGROUND[2]

Defendant owns the Yellow Submarine restaurant in Lynchburg, Virginia, located at 3313 Old Forest Road. Defendant allegedly discriminated against Plaintiff under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq*. Plaintiff has cerebral palsy and uses a walker to move. He claims Yellow Submarine is a place of public accommodation that has violated the ADA by failing to remove architectural barriers to accessibility, including steps between the sidewalk and Yellow Submarine's front and side entrances. Plaintiff attempted to access the restaurant on May 8, 2013, but could not because of the steps. "There is no ramp at any entrance to provide a safe and accessible means of entry into the restaurant," and no "appropriate alternative accommodations . . . were available or offered" to Plaintiff. Compl. ¶¶ 12–13. Plaintiff was therefore "unable to enter the restaurant." *Id.* at ¶ 14. The restaurant already has an accessible parking lot and properly sloped pathway to the entrance, but lacks a low enough threshold. It would cost approximately $500–1600 to install an ADA-compliant temporary ramp, according to Plaintiff.

Plaintiff is not certain whether a person in a walker or wheelchair would be able to access the restroom in Yellow Submarine. But he pleads on information and belief that he would not be able to access Yellow Submarine's restroom because of "[an] improper door handle, no grab

---

[1] Defendant did not respond to this Court's order to schedule a hearing, but attended the hearing.

[2] All of Plaintiff's factual allegations are deemed admitted by the defaulting Defendant. Fed. R. Civ. P. 8(b)(6).

bars, improper sink controls," and inadequate space around the toilet. *Id.* at ¶¶ 15, 45. Plaintiff did not visit the restrooms, but his counsel conducted an investigation there. Plaintiff estimates it would cost under $200, excluding labor costs, to make the restroom accessible to him.[3]

Plaintiff attempted to resolve this matter without resorting to litigation. The Virginia Office for Protection and Advocacy ("VOPA") wrote letters to Defendant informing him that Plaintiff and others are unable to access his restaurant or use the restroom. *Id.* at ¶ 16. In October 2011, a disability advocate spoke with Defendant. Defendant agreed the restaurant does not comply with the ADA and "stated he would have a contractor come out to the site," but never notified VOPA of his plan for accommodation, despite requests to do so within three weeks. *Id.* at ¶ 17. Four weeks later, a disability advocate contacted Defendant again, but the parties could not reach a resolution. Defendant has not since offered any accommodations to remove these barriers to access the restaurant and restroom. *Id.* at ¶¶ 18–19.

At the hearing, Defendant told this Court for the first time that his business has not been profitable for years and that he plans to either sell it or close it within the next two months. Defendant said the yearly net revenue for his business runs between $230,000 and $240,000. Plaintiff provided tax records that show Defendant purchased the property in 2007 for $250,000, sold it in 2008 to "Doremus Properties LLC" for $0, and that the property has appreciated in total value from $182,300 to $243,500 from 2007 to 2013. Defendant has paid all his taxes on the property each year, although in the last few years they have often included a penalty. Defendant claims he still owes $190,000 on the property's mortgage.

---

[3] Initially, Plaintiff also alleged the restroom does not comply with the ADA because of a narrow doorway and insufficient space beneath the sink. Plaintiff says he could access the restaurant and restroom without changes to these features, because he uses a walker and not a wheelchair. This Court will only address relief that would make the restaurant and its restrooms accessible to Plaintiff, avoiding injunctions for general ADA compliance matters that do not affect Plaintiff. *See, e.g.*, *Brother v. CPL Investments, Inc.*, 317 F. Supp. 2d 1358, 1368 (S.D. Fla. 2004) (citing *Steger v. Franco,* 228 F.3d 889, 893 (8th Cir. 2000) and finding plaintiffs "do not have standing to complain about alleged barriers which are not related to their respective disabilities.").

In May 2013 when Plaintiff attempted to visit the restaurant, he was employed by VOPA. Plaintiff's Memorandum in Support of Standing states:

> As a condition of his employment, Plaintiff was frequently required to travel throughout the Commonwealth to meet with clients and adverse parties; conduct presentations; do field work, such as survey buildings and polling sites; and other work that frequently required all-day travel. Trips such as these require that Plaintiff be able to stop for meals. Public restaurants were also a frequent location for client meetings.

Mem. in Supp. of Standing 6 (docket no. 12). Plaintiff's affidavit attached to the Memorandum in Support of Standing ("Affidavit") confirms these facts, noting he traveled to locations in Farmville, Appomattox, and Lynchburg "in the course of [his] employment" and selected Yellow Submarine for lunch "due to [his] understanding that it was accessible to people with disabilities based on an agreement reached with the business on behalf of a former client." Pl.'s Aff. ¶¶ 6–7 (docket no. 12). The affidavit confirms "all staff were required to participate in field work outside the office on a regular basis, and it was and remains a common practice of the office to both obtain meals and perform work in restaurants while in the field." Pl.'s Aff. ¶ 8.

"If Defendant's restaurant were accessible to [Plaintiff], he would patronize it," and if the "restroom were accessible . . . he would use it." Compl. ¶¶ 20, 50. Plaintiff also alleges a "present intention and desire to visit the restaurant again." Although he resides in Richmond about 120 miles from the restaurant, his new employment[4] likely requires visiting locations within only a few miles of Yellow Submarine, and he "would return to eat [at Yellow Submarine]" if it were accessible. *Id.* at ¶¶ 7, 53.

Plaintiff's current job as an Administrative Specialist for the Virginia Department of Health makes him "part of a team of individuals responsible for the oversight of Long Term Care

---

[4] Plaintiff's Affidavit says he worked for VOPA from January 2008 until August 2013. On August 30, 2013, he left VOPA to "take the position of Administrative Specialist with the Virginia Department of Health to provide direct administrative support to the Division of Long Term Care Services management staff." Pl.'s Aff. ¶ 10.

Facilities and Nursing Homes throughout the Commonwealth." Pl.'s Aff. ¶ 11. As part of this job, he travels from Richmond to various facilities throughout Virginia to meet with staff and inspect the facilities, and it is expected that he "be available to visit these locations and assist" with collecting and recording data related to them. Pl.'s Aff. ¶ 15. Plaintiff has no current plans to leave his job and expects "to conduct field visits at least several times a year, including" to eleven facilities in Lynchburg. Pl.'s Aff. ¶¶ 13, 16. These facilities range in distance from 2.4 to 8.3 miles from Yellow Submarine.[5] Pl.'s Aff. ¶¶ 13, 16.

Finally, Plaintiff's Affidavit notes he has "never before filed a lawsuit based on issues arising from [his] disability." Pl.'s Aff. ¶ 17. He settled two prior matters without litigation as VOPA's client. The first was to gain access to an elevator in his apartment building, and the second "involved the reliability of transportation to and from [his] work by the Greater Richmond Transit Authority." Pl.'s Aff. ¶¶ 18, 19. In neither case did VOPA request or receive any fee from Plaintiff.

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(b)(2), it is within a court's discretion to determine whether to enter a default judgment. "The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." *See Taylor v. StrongBuilt, Inc.*, No. CIV.A. 09-0806-KD-C, 2011 WL 4435601, at *4 (S.D. Ala. Sept. 23, 2011) (quoting Fed. R. Civ. P. 55(b)(2)).

---

[5] As requested, this Court takes judicial notice under Federal Rule of Evidence 201(b)(2) of the relative distances between these facilities and Yellow Submarine as accurately and readily determinable from Google Maps, a source whose accuracy cannot reasonably be questioned.

Several factors must be considered as a court exercises its discretion and holds any necessary hearings.[6] A court must first assure it has subject matter and personal jurisdiction over a defendant. *See, e.g.*, *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004). Then it must accept the well-pleaded *factual* allegations of a plaintiff's complaint as true and deem them admitted by a defendant. Fed. R. 8(b)(6); *Pitts*, 321 F. Supp. 2d at 1356. A plaintiff's conclusions of law are not deemed admitted, however, and "the Court may grant only the relief for which a sufficient basis is asserted." *Pitts*, 321 F. Supp. 2d at 1356. *See also Tyco Fire & Sec., LLC v. Alcocer,* 218 F. App'x 860, 863 (11th Cir. 2007) (per curiam). In a default judgment for damages, a court must first examine the well-pleaded allegations of the complaint and ensure they "actually state a cause of action" and provide a "substantive sufficient basis . . . for the particular relief sought." *Taylor*, 2011 WL 4435601, at *4. Practically, this means a plaintiff must prove a prima facie case against a defendant. *Id.*

"Once the court determines that a judgment by default should be entered, it will determine the amount and character of the recovery that should be awarded." *Patray v. Nw. Pub., Inc.*, 931 F. Supp. 865, 869 (S.D. Ga. 1996) (quoting 10 *Federal Prac. & Proc.* Civil 2d § 2688 (1996 Supp.)). Furthermore, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). In sum, this Court in its discretion must assure itself of jurisdiction, determine Defendant's liability, and grant any merited recovery. *See, e.g.*, *Pitts*, 321 F. Supp. 2d at 1356.

---

[6] The Ninth Circuit has enumerated factors to consider before entering a default judgment, but these factors have not been adopted in the Fourth Circuit. *See Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cir. 1986) (finding a court should consider: (1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect, and (7) the strong public policy favoring decisions on the merits."). I analyze similar factors, and for the same reasons these factors result in a default judgment for Plaintiff, I also find the Ninth Circuit's test would favor entry of default judgment.

Plaintiff also requests permanent injunctions. Under "well-established principles of equity," a plaintiff seeking a permanent injunction must demonstrate: (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Legend Night Club,* 637 F.3d at 297 (quoting *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006)).

## IV. DISCUSSION

Plaintiff requests a default judgment under Rule 55(b)(2). This case presents the following issues: (1) whether Plaintiff is a person with a disability as defined by the ADA; (2) whether Yellow Submarine is a place of public accommodation under the ADA; (3) whether Plaintiff has standing to pursue this action; (4) whether Plaintiff has made a prima facie case that the entrances and/or restrooms are not ADA compliant, which includes whether the injunctive relief Plaintiff seeks would be readily achievable under the ADA; and (6) whether reasonable attorneys' fees and costs are warranted.[7]

It is clear both that Plaintiff qualifies as a person with a disability under the ADA and that Yellow Submarine is a place of public accommodation under that Act. The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1)(A). Major life activities include "performing manual tasks, . . . eating, . . . walking, standing, lifting, [and] bending . . . ." 42 U.S.C. § 12102(2)(A). ADA regulations note that the "phrase physical or mental impairment includes . . . cerebral palsy." 28 C.F.R. § 36.104(1)(iii). A place of public accommodation under

---

[7] Although Plaintiff has addressed attorneys' fees in his Motion for Default Judgment, I will defer ruling on this matter until I have received Plaintiff's final memorandum outlining the costs and fees.

Title III of the ADA includes a "restaurant, bar, or other establishment serving food or drink . . . if the operations of such entities affect commerce." 42 U.S.C. § 12181(7)(B).

### A. Jurisdiction and Standing

Plaintiff has followed the proper procedure to receive a default judgment from this Court, and this Court has personal jurisdiction over Defendant. Personal jurisdiction exists over Defendant because he was personally served at Yellow Submarine's address in Lynchburg with Plaintiff's Complaint and a summons. Yellow Submarine operates in Lynchburg, and Plaintiff's inability to enter it occurred in Lynchburg. Therefore, venue is also proper in this Court. This Court has subject matter jurisdiction over Plaintiff's claims, because they arise under the federal Americans with Disabilities Act and corresponding federal regulations. *See* 28 U.S.C. § 1331; 42 U.S.C. § 12181, *et seq*; 28 C.F.R. Part 36.

The Fourth Circuit has observed that "standing is a threshold requirement implicating the jurisdiction of the federal courts, and is 'perhaps the most important' condition for a justiciable claim." *Daniels v. Arcade, L.P.*, 477 F. App'x 125, 128 (4th Cir. 2012) (quoting *Allen v. Wright,* 468 U.S. 737, 750 (1984)). To establish Article III standing, a plaintiff must show: "(1) that the plaintiff has sustained an injury in fact; (2) that the injury is traceable to the defendants' actions; and (3) that the injury likely can be redressed by a favorable judicial decision."[8] *Id.* (citing *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.,* 629 F.3d 387, 396 (4th Cir.2011), and *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)). "To demonstrate an injury in fact, a plaintiff must suffer an invasion of a legally-protected interest that is concrete and

---

[8] Whether Plaintiff suffered an injury in fact in the past, whether this injury is fairly traceable to Defendant's alleged ADA violations, and whether the injury can likely be redressed by a favorable judicial decision are not in contention here. Plaintiff visited Yellow Submarine and was denied access because of his disability. Defendant's actions in allowing barriers to access certainly caused that injury, and an injunction mandating ADA-compliant access would redress the injury. The major question is whether Plaintiff can show he faces a real and immediate threat of future harm sufficient to grant the injunctions he seeks.

particularized, as well as actual or imminent." *Id.* at 129 (citing *Friends of the Earth*, 629 F.3d at 396 and *Lujan,* 504 U.S. at 560). When a complaint seeks prospective declarative or injunctive relief, a plaintiff "also must allege and prove that there is a 'real and immediate threat' that he will be wronged again." *Id.* (quoting *Bryant v. Cheney*, 924 F.2d 525, 529 (4th Cir. 1991)).

Allegations of facing barriers to accessibility upon past visits to public accommodations sufficiently plead concrete and particularized injuries in fact. *See, e.g.*, *Daniels*, 477 F. App'x at 129–30; *Pickern v. Holiday Quality Foods Inc.,* 293 F.3d 1133, 1137–38 (9th Cir. 2002); *Steger v. Franco, Inc.,* 228 F.3d 889, 893–94 (8th Cir. 2000); *Flaum v. Colonial Williamsburg Found.*, No. 4:12-cv-111, 2012 WL 5879128, at * 3–4 (E.D. Va. Nov. 21, 2012); *Parr v. L & L Drive-Inn Rest.*, 96 F. Supp. 2d 1065, 1079 (D. Haw. 2000). However, alleging past concrete and particularized inquiry is distinct from alleging a real and immediate threat of future harm.

In the instant case, Plaintiff adequately alleges that he suffered a concrete and particularized injury in fact, in the past. He attempted to visit Yellow Submarine on May 8, 2013, and barriers to accessibility prevented him from entering or enjoying the restaurant. Seeking permanent injunctions against Defendant, Plaintiff must also allege a real and immediate threat of future harm from Defendant's ADA violations. Courts differ on what factors should be examined, and how much proof is required to establish a threat of future harm. But all courts inquire about the likelihood a plaintiff will again visit the premises at issue.

Some courts apply a four-factor test to "assess[] the credibility of [a plaintiff's intention to return]" to the site of ADA violations, in determining whether the plaintiff alleges a threat of future injury. *Norkunas v. Park Rd. Shopping Ctr., Inc.,* 777 F. Supp. 2d 998, 1001–02 (W.D.N.C. 2011) *aff'd*, 474 F. App'x 369 (4th Cir. 2012) (per curiam). These factors include: "(1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's

9

past patronage; (3) the definiteness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel." *Id.* at 1002 (citing *Equal Rights Ctr. v. Abercrombie & Fitch Co.*, No. JFM–09–3157, 767 F. Supp. 2d 510, 515–16, 2010 WL 4923300, at *4 (D. Md. Nov. 29, 2010)).

In *Norkunas*, for a plaintiff who lived 120 miles from a shopping center, alleged only that he would return sometime "after the holidays," and traveled through the city on a cross-country trip about three or four times per year, the court found the plaintiff could not credibly demonstrate he was likely to return. *Id.* at 1002–03. The court compared that plaintiff to another plaintiff, Mr. Hardy, who alleged he was frequently in the area for gun show work at a specific place near the shopping center, would be in the area for another gun show on a particular date, and planned to bring his wife and convince her to move to the region. *Id.* Mr. Hardy's allegations proved a likelihood of return and future injury, unlike those in *Norkunas*. The Fourth Circuit affirmed *Norkunas*, per curiam, on July 6, 2012.

On April 24, 2012, the Fourth Circuit found a plaintiff alleged an adequate threat of future injury, declining to endorse the four-factor test because in some cases it can "overly and unnecessarily complicate[] the issue[s] at hand. *See Daniels*, 477 F. App'x at 129–31. It was sufficient that the plaintiff, who lived about 20 miles from a market, alleged that he "intend[ed] to continue to visit the [Market] in the future for his shopping needs." *Id.* at 127, 130. That allegation was plausible since he lived in close proximity to that market. *Id.* at 130. He need not, as the district court demanded, provide exact dates on which he visited the market in the past, nor "a more specific time at which he intend[ed] to visit the Market in the future," because no such specificity was required to survive a motion to dismiss. *Id. See also Flaum v. Colonial Williamsburg Found.*, No. 4:12-cv-111, 2012 WL 5879128, at *3–4 (E.D. Va. Nov. 21, 2012)

10

(finding threat of future injury when plaintiff lived about 30 miles from the location, went several times per month to shop and dine, and planned to return with his fiance in the future).

Following these courts, I find that a plaintiff alleges a plausible or credible intent to return to the location of ADA violations if either: (1) the plaintiff lives in relative proximity to the location (up to about 30 miles); and/or (2) the plaintiff can give some specific reason why he might be in the area, rather than just in the city as a whole. A plaintiff need not necessarily give a specific time or date when he plans to return.

Applying these factors, Plaintiff has expressed a plausible and credible intent to return to Yellow Submarine.[9] He lives about 120 miles from Yellow Submarine, by the shortest route. *See* Compl. 1. This is not within close proximity. But Plaintiff traveled and currently travels in the Lynchburg area near the restaurant, and he has expressed a specific intention and desire to visit the restaurant again, saying he would eat there and visit the restrooms if accessible. Compl. ¶¶ 7, 20, 50, 53. The eleven locations Plaintiff is expected to inspect at least a few times per year range from 2.4 to 8.3 miles from Yellow Submarine. This distance is well within the 20–30 mile range that proved sufficient in *Daniels* and *Flaum*, and analogizes closely to the plaintiff the *Norkunas* court found alleged a threat of future harm. In fact, Plaintiff likely satisfies even the stringent four-factor test: (1) his work will likely take him within close proximity of Yellow Submarine; (2) he has attempted to patronize it in the past;[10] (3) Plaintiff has a definite plan to return; and (4) Plaintiff will likely travel nearby at least once a year, if not more.

---

[9] Although a default judgment requires that Plaintiff allege a prima facie case instead of looking to plausibility under Rule 12(b)(6), the two inquiries similarly ask whether allegations seem sufficient on a fairly shallow review.

[10] Plaintiff did not attempt to use Yellow Submarine's restroom. He has standing for the restroom because he was actually aware of discriminatory conditions there and was thereby deterred from visiting the restroom. *See, e.g.*, *Flaum*, 2012 WL 5879128, at *4; *Equal Rights Center v. Abercrombie & Fitch Co.,* 767 F.Supp.2d 510, 525 (D. Md. 2010); *Clark v. McDonald's Corp.,* 213 F.R.D. 198, 214 (D.N.J. 2003) ("[A] disabled person [is permitted] to sue for injunctive relief under Title III to remedy an architectural barrier, even if he has not actually encountered it, so long as he both has knowledge of its existence and would otherwise visit the public accommodation.").

Additionally, Plaintiff has a nonexistent history of filing ADA-related litigation. This "scant" history "cannot . . . serve[] to undermine his allegations." *Daniels*, 477 F. App'x at 130. This is the first suit Plaintiff has filed for an ADA violation, although he settled two other matters directly related to his ability to enter his home and get to work reliably.

### B. Prima Facie Proof of Noncompliance with the ADA and Ready Achievability

Title III of the ADA prohibits discrimination against disabled individuals that would prevent their "full and equal enjoyment" of places of public accommodation. 42 U.S.C. § 12182(a). Discrimination by a public accommodation includes failing to remove an architectural barrier to accessibility when it is readily achievable to do so, or failing to provide a readily achievable alternative method of accessibility. 42 U.S.C. § 12182(b)(2)(A)(iv)–(v); 28 C.F.R. § 36.304. Readily achievable means "easily accomplishable and able to be carried out without much difficulty or expense." 28 C.F.R. § 36.304. To determine in depth whether a measure is readily achievable, a court should consider:

> **(A)** the nature and cost of the action needed [under the ADA];
> **(B)** the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;
> **(C)** the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
> **(D)** the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12181(9).

Following the Tenth Circuit, most district courts have found that plaintiffs bear the burden to establish: (1) the existence of access barriers; and (2) that the suggested method for removing the barriers is readily achievable. Then the burden would shift to a defendant to prove

the removal of barriers is *not* readily achievable. *See Vogel v. Rite Aid Corp.*, --- F. Supp. 2d ---, No. CV 13-00288 MMM EX, 2014 WL 211789, at *7 (C.D. Cal. Jan. 17, 2014); *Speciner v. NationsBank, N.A.*, 215 F. Supp. 2d 622, 632 (D. Md. 2002). Yet, in *Molski v. Foley Estates Vineyard & Winery, LLC*, 531 F.3d 1043, 1048 (9th Cir. 2008), the Ninth Circuit found the burden to show no ready achievability rested solely with a defendant owner of a historical building. The court first relied on ADA regulations requiring historical facility owners to consult with state preservation officers. It also discussed the fact that defendants will have the best information available about ready achievability, and the insurmountable burden plaintiffs would face if forced to present the court with all the studies, construction plans, and finances necessary to show ready achievability. *Id.* at 1048–49.

In this case, I will place the initial burden on Plaintiff to show ready achievability. *See, e.g.*, *Vogel v. Rite Aid Corp.*, --- F. Supp. 2d ---, No. CV 13-00288 MMM EX, 2014 WL 211789, at *7 (C.D. Cal. Jan. 17, 2014); *Johnson v. Henson*, No. CIV S-09-2286 KJM, 2011 WL 5118594, at *3 (E.D. Cal. Oct. 27, 2011) *report and recommendation adopted*, No. CV S-09-2286 KJM, 2011 WL 6024416 (E.D. Cal. Dec. 2, 2011). But the imbalance of information and Defendant's own failure to provide detailed information or appear before the hearing make it difficult for Plaintiff to meet a summary-judgment-style burden. Thus, I will first require Plaintiff to allege sufficient facts to state a plausible, prima facie case for ready achievability. Next, Defendant has the burden to rebut that initial showing.

Plaintiff has met this initial burden. "Removing the architectural barriers preventing [Plaintiff] from entering Defendant's restaurant is 'readily achievable,' " according to Plaintiff. Compl. ¶ 39. "Defendant could do so by installing a proper ramp leading to the entrance of the

restaurant," including "by providing a temporary ramp when needed."[11] Compl. ¶ 39; *see also* 28 C.F.R. § 36.304(e). ADA Regulations list an entry ramp as an example of a modification public accommodations can make to remove an architectural barrier. 28 C.F.R. § 36.304(b)(1). During the hearing, Plaintiff clarified Defendant could install a temporary ramp for $500–1600.

Plaintiff pleads on information and belief that "the modifications necessary to make the restroom accessible will not involve major renovation and [are] readily achievable by Defendant." Compl. ¶ 37. Plaintiff suggests fairly simple modifications that he alleges will not cost more than $200, excluding labor costs. These include: (1) installing accessible door hardware; (2) installing grab bars in toilet stalls; (3) taking down toilet partitions to increase maneuvering space; and (4) repositioning the paper towel dispenser. Providing access to restroom facilities forms the third priority for public accommodations, as denoted by the ADA regulations, and many of the modifications Plaintiff suggests are specifically enumerated. *See* 28 C.F.R. § 36.304(b)(11)-(13), (b)(17), (c)(3).

Although partially a legal determination, Plaintiff has pled and argued sufficient facts, deemed admitted by Defendant, to show alterations to Yellow Submarine would be readily achievable. *See* Fed. R. Civ. P. 8(b)(6). Plaintiff requests modifications that would cost, at most, between $2000 and $3000. Defendant says he plans to go out of business soon, but not due to the modifications Plaintiff requests. Many sandwich shops and restaurants in the area, plus Defendant's somewhat secluded location, make it difficult for Defendant to compete and profit. Despite the financially distressed state of his business, a cost of $2000 or $3000 for relatively minor modifications is readily achievable under the ADA. At most, this would amount to about 1% of Defendant's net revenue for one year. The nature and cost of those modifications are thus

---

[11] Although Plaintiff initially alleged the entry's door frame would need to be widened, he confirmed in subsequent motions and the hearing that a ramp is the only necessary modification of the entrance.

minor. Although Yellow Submarine's financial resources are slim in this difficult market, these small modifications cannot alone drastically affect Defendant's business. Even for a small business, these are the sorts of modifications that are "easily accomplishable and able to be carried out without much difficulty or expense." 28 C.F.R. § 36.304.

Therefore, I find Plaintiff satisfied his initial burden to show the injunctions he requests on his own behalf are readily achievable. Defendant did not rebut that showing, although he provided general testimony about the financial state of his business at the hearing.

### D. Permanent Injunction Analysis

Plaintiff has also shown his claims warrant permanent injunctions. First, Plaintiff has suffered an irreparable injury in being discriminatorily excluded from the full and equal enjoyment of Yellow Submarine, a place of public accommodation. *See* 42 U.S.C. § 12101, *et. seq*. Second, monetary damages are inadequate to compensate him, since he faces a real and immediate threat of future injury upon attempting to visit Yellow Submarine again. Third, considering the balance of hardships between Plaintiff and Defendant, for which the ADA has already provided a framework through the ready achievability analysis, injunctive relief is warranted. And fourth, the public interest would not be disserved by a permanent injunction. These injunctions would impose a burden on Defendant to comply with the ADA when he already faces financial difficulties. But some of that burden is self imposed because Plaintiff asserts he would have worked with Defendant if Defendant had responded to any of Plaintiff's pleadings or notices before the hearing on this motion. Furthermore, Defendant's compliance is required only insofar as it is readily achievable, and the modifications requested by Plaintiff are slight compared to Defendant's net revenue. This statutory scheme surely strikes a reasonable

15

balance, given that ADA compliance will eliminate a form of discrimination against individuals with disabilities. Plaintiff's allegations warrant permanent injunctive relief.

## V. Conclusion

I find Plaintiff is a person with a disability under the ADA, and that Yellow Submarine is a place of public accommodation. Plaintiff has standing to pursue this action to eliminate barriers that prevent him from accessing Yellow Submarine and its restrooms. As noted above, I find Plaintiff has made a prima facie case that Yellow Submarine's entrances and restrooms are not ADA compliant and that the modifications Plaintiff requests for his own accessibility are readily achievable under the ADA. Defendant has not rebutted that showing.

Therefore, I hereby GRANT Plaintiff's Motion for Default Judgment and ORDER as follows:

1. Yellow Submarine, a place of public accommodation owned and operated by Defendant, is not accessible to Plaintiff, in violation of his rights under the ADA;

2. Defendant is hereby permanently enjoined from discriminating against Plaintiff under the ADA by not removing or otherwise circumventing barriers to Plaintiff's access to Yellow Submarine and its restrooms;

3. Within 90 days of receiving notice of this order,[12] Defendant shall install an appropriate ramp, either temporary or permanent and to the specifications of the ADA and its regulations, or offer other appropriate accommodations under the ADA so that Plaintiff can enter Yellow Submarine;

---

[12] During the hearing on the Motion for Default Judgment, the parties discussed possible timelines for these modifications. Based on the minor nature of the modifications and the testimony of both parties, I find that Defendant should be able to comply with these permanent injunctions within 90 days.

4. Within 90 days of receiving notice of this order, Defendant shall modify Yellow Submarine's restroom so that it is accessible to Plaintiff by ADA standards, including any necessary installation of door hardware, grab bars in toilet stalls, removal of toilet partitions, and repositioning of the paper towel dispenser.

The Clerk of the Court is hereby directed to send a certified copy of this order to all counsel of record, and to Defendant at 3313 Old Forest Rd., Lynchburg, VA 24501.

It is so ORDERED.

Entered this \_\_\_11th\_\_\_ day of February, 2014.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE